## Margaret Devine v. William McMillan and Arthur McMillan, Partners, etc.

1. EVIDENCE—*Tending to Prove the Main Fact by Affecting Probabilities, Competent.*—The plaintiffs, who had purchased a machine for sinking wells, brought an action against the defendant to recover for services in sinking a well, it appearing that the well in question was the first one sunk by them with the new machine. Evidence showing that when the machine was bought they made offers to put down the first well for the cost of the tubing and pump, and would do so for any one who would allow them to put down the first well, is competent under a claim that such was the contract in putting down the well in question.

2. HUSBAND AND WIFE—*When the Wife is not Liable for the Husband's Contracts.*—Where a husband, as his own enterprise, and in his own interest, made a contract for sinking a well upon his wife's property but without her authority, it will not be her contract and she will not be liable upon it.

3. INSTRUCTIONS—*Reciting Facts as Conclusive Proof of Material Issues.*—In an action to make the wife liable upon the contract of her husband, an instruction which makes certain facts recited conclusive proof of the husband's agency, is erroneous.

4. SAME—*Erroneous, as not Stating the Essential Elements of an Estoppel.*—An instruction, stating if the wife knew of the contract for the well being made by the husband, and pointed out the place where she wanted it, and made no objection to the performance of the contract, she would be estopped to deny that he was acting as her agent, is erroneous, as not stating the essential elements of an estoppel.

5. SAME—*Giving Undue Prominence to Evidence.*—An instruction which calls the attention of the jury to the evidence of the party in whose behalf it is given, by reciting and giving it undue prominence, is erroneous.

6. EVIDENCE—*Of Husband's Solvency, Immaterial.*—On the trial of an action seeking to make the wife responsible for the contracts of her husband, she offered to prove that her husband was solvent, and able to pay all his liabilities; *held*, immaterial.

Assumpsit.—Services, etc.  Appeal from the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding.  Heard in this court at the May term, 1895.  Reversed and remanded.  Opinion filed December 10, 1895.

REEVES & BOYS, attorneys for appellant.

BREWER & STRAWN, attorneys for appellees.

MR. PRESIDING JUSTICE CARTWRIGHT DELIVERED THE OPINION OF THE COURT.

Appellees, as partners under the firm name of McMillan Brothers, brought this suit against appellant to recover for boring a well and furnishing a pump for the same, on a farm where she resided with her husband and family, and in which she had a life estate. The first count of the declaration alleged that in consideration that appellees had bored the well and attached the pump at appellant's request, she promised to pay what they reasonably deserved therefor. The second charged a liability under the statute making both husband and wife liable for the expenses of the family, to pay what the well and pump were reasonably worth, and averred that the well was made and pump put in at the request of appellant's husband. The consolidated common counts were added to the foregoing. After the evidence was all in, three additional counts were filed by leave of court. The first of these averred that, in consideration of appellees having bored the well and put in the pump at appellant's request, she promised to pay $1.40 per foot of the depth of the well. The second additional count alleged a contract with appellant to bore the well and put in the pump at said price of $1.40 per foot; and the third charged liability under the above-mentioned statute, by virtue of a contract with appellant's husband, at that price. The general issue was pleaded and the trial resulted in a verdict and judgment for $261.

The contract under which the work was done, was made with defendant's husband, in his own name, and he did not assume to act for defendant, nor to bind her in any way. The plaintiffs did not understand that the husband was acting for defendant, or that she was in any way responsible for the fulfillment of his contract. They sought payment from him and he made a payment on the work, and they tried to get a note from him for the amount due. At the trial the endeavor was to hold defendant as an undisclosed principal, and the instructions giving the law as to her liability, were directed to the question of the husband's agency.

The controversy involved three distinct issues of fact in dispute between the parties. 1. What the contract was. 2. Whether it was performed by plaintiffs. 3. Whether the husband was the agent of the defendant in making the contract. The evidence for plaintiffs as to what the contract was consisted of the testimony of one of them, that they were to drill the well, furnish everything, put in the pump and guarantee water or no pay, and that the husband, Michael Devine, was to pay them $1.40 per foot, and furnish board while they were at work. Michael Devine and his boy testified for defendant on that question and contradicted the witness for plaintiffs. They said that he represented that plaintiffs were about to get machinery to drill wells, and wanted to drill a trial well to learn the nature of the clays and measure them and learn the distance to rock, and for that purpose agreed to do this job for the cost of the tubing and pump. In this state of the evidence the defendant, having proved that this was the first well drilled by plaintiffs after they got their machine, attempted to prove, by two witnesses, that the plaintiff, who made the contract, had at about the same time made offers to others to put down a first well as a test well, to find out about the earth and stone and test the machine for the cost of the tubing and pump, and said that plaintiffs would do that for any person who would allow them to put down the first well. This was not permitted. In the contradiction between the witnesses the probability of a contract being made of the nature claimed by defendant would naturally have weight with the jury, and it seems to us that evidence that plaintiffs were offering to make such a contract, and asserting a willingness to make it with any one who would allow them to put down the first well, would tend to establish such probability as to the contract for the first well put down by them, and thereby aid in proving the main fact. Evidence which only tended to prove the main fact by affecting probabilities was held competent in Thorp v. Goewey, 85 Ill. 611; Phillips v. Roberts, 90 Ill. 592.

On the second question the evidence was conflicting as to

whether a reasonable supply of water was secured, and we would not be disposed to disturb the finding of the jury as being against the evidence on that question.

It was essential to a recovery that plaintiffs should succeed on the third issue of fact by proving that Michael Devine acted as agent of defendant in making the contract. He did not assume to act for her, and plaintiffs had no reason to believe and did not understand that he was so acting. There was no question about any assumed act of agency which she might afterward ratify and thus become bound, and no claim that he was held out as agent, so as to estop her from making a denial. If she was bound to pay, it was because she was an undisclosed principal, and Michael Devine, while apparently contracting in his own behalf, was in fact acting as her agent, by her authority.

The evidence which it is claimed proved the agency, was that defendant had a life estate in the premises; that she wanted the well located in a different place from her husband's choice, and said that every time she wanted a pail of water, she didn't want to run clear around the house after it; that her wishes prevailed in the matter of location; that she knew that the well was being drilled, and that when it was completed, she tried the water to see whether it was soft. On the other hand, defendant emphatically denied that she ever authorized her husband to enter into the contract, or that he was her agent in the transaction in any sense. If the contract was made, as she claimed, without her authority, but by her husband as his own enterprise and in his own interest, although the well was on her property, it would not be her contract, and she would not be liable. Campbell v. Jacobson, 145 Ill. 389.

The first instruction given at the request of plaintiffs, told the jury that if defendant's husband made the contract for boring the well on land in which she had a life estate, and she designated the place where the well should be drilled, and saw the work going on and made no objection, they should find against her, and assess the damages at the contract price, less the payments made by her husband. This

Devine v. McMillan.

instruction made the facts recited conclusive proof of the husband's agency. There was a cistern on the premises, which mainly supplied the domestic wants; and the principal use of the well was to supply water for stock, for which purpose Michael Devine had been hauling water. Under this instruction, although it might be shown that the well was his enterprise and for his own purposes for watering his stock, and was drilled without defendant's authority or even consent, she would become a principal and he an agent if the facts recited existed. It permitted no denial, and we think it was wrong. The facts stated might be considered as evidence tending to show that there was an agency, but they were not conclusive of the fact.

The second instruction stated that if defendant knew of this contract made by her husband and pointed out the place where she wanted the well, and never made any objection to the plaintiff to the performance of the contract, she was estopped to deny that her husband was acting as her agent in the matter, and would not be allowed to successfully defend the suit by saying she never authorized the contract, and objected to her husband against the sinking of the well. If defendant knew all about the contract, she would know that it was made by her husband in his own name, and that in its performance plaintiffs had no hope or expectation that she would pay them, and that no act of theirs was founded on an understanding that he was her agent. The essential elements of an estoppel were lacking, and the instruction was erroneous.

The third instruction called the attention of the jury to the facts that Michael Devine was the husband of defendant; that they were living together on the same land where the well was sunk; that they were in need of water and were hauling water at the time; that she owned an estate in the land and that she directed where to sink the well and made no objection to the performance of the contract; and the jury were directed to consider these things with the other evidence and say whether defendant authorized or ratified the contract. So far as ratification was concerned, there

could be none unless the contract was made by Michael Devine, assuming to act as agent for defendant, since, unless it was so made, there would be no assumed agency to ratify. The instruction should not have called attention to the evidence for plaintiffs by reciting it, and thereby giving it undue prominence. The instruction called attention to the need of water and hauling water at the time. That was being done in the farming operations, for the stock, and it was given to the jury as tending to prove that defendant was the principal in the contract. There was no evidence as to who owned the stock, but defendant wanted to prove that Michael Devine owned the grain, horses and cattle on the farm, and carried on the farm for himself. The evidence was not admitted. We think it was competent on the question whether he was having the well bored for his own purposes or as the agent of his wife.

On the trial defendant offered to prove the financial condition of her husband and to show that he was responsible and able to pay this and all other liabilities. An objection was sustained to the offer. We think that as the evidence stood the fact proposed to be proved was immaterial. There have been suits to enforce mechanic's liens against the real estate of married women where it has been held that an estoppel *in pais* affecting the title available in a court of equity, has arisen out of the fact that the husband was held out or allowed to appear as the owner of the property. In some such cases it has been deemed a matter of importance that the husband was insolvent, and that as the statute gave the lien, the mechanic was presumed to be relying on the property; but that question does not arise here, and there was no attempt to prove that Michael Devine was insolvent.

For the errors indicated the judgment will be reversed and the cause remanded.